IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  )  Plaintiff,  )  )  vs.  )  )  LUIS ALBERTO AQUINO,  )  )  Defendant.  ) | 8:10CR217  FINDINGS AND  RECOMMENDATION |

This matter is before the court on the motion to suppress filed by defendant Luis Alberto Aquino (Aquino) (Filing No. 16). Aquino is charged in the Indictment with the knowing possession of 50 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Aquino seeks to suppress evidence seized by the Commercial Interdiction Unit (CIU) of the Nebraska State Patrol (NSP) at the Greyhound Bus Depot in Omaha, Nebraska, on February 9, 2010.

An evidentiary hearing was held on Aquino's motion on September 28, 2010. Aquino was present for the hearing along with his counsel, First Assistant Federal Public Defender Shannon P. O'Connor. The United States was represented by Assistant U.S. Attorney Kimberly C. Bunjer. During the hearing, the court heard the testimony of NSP Investigators Richard Lutter (Investigator Lutter) and Jason Scott (Investigator Scott). The court received into evidence Exhibits 101 - 105 (Photographs of the defendant on February 9, 2010). A transcript of the hearing (TR.) was filed on October 5, 2010 (Filing No. 34).

**FINDINGS OF FACT**

Investigator Lutter, along with other officers of the CIU (Investigator Scott, NSP Investigator Rasgorshek, DEA Special Agent Paul Orduna), met at the Greyhound Bus Depot in Omaha, Nebraska, on February 8, 2010, shortly after 5:00 a.m. (TR. 4-5). The officers planned to meet the inbound bus from Denver and the West Coast en route to Chicago (TR. 5). As part of their routine, the officers observed the bus arrive and park next to the terminal for servicing and observed the passengers as they left the bus to enter the passenger terminal (TR. 7). Investigators Scott and Rasgorshek followed an individual who got off the bus and went through the main bus terminal to the north portico outside (TR. 7,

71-72). Investigator Lutter followed these officers and observed the activity around them as they contacted the bus passenger (TR. 7). As the officers were speaking to the bus passenger on the north side of the bus terminal, Investigator Lutter observed Aquino for a period of approximately four minutes take an interest in the officers' activity with the passenger (TR. 7, 31). Aquino was engaged in a cell phone conversation with someone wherein he appeared to be commenting on the officers' activity with the passenger (TR. 8). Following the contact with the passenger, the officers went inside the bus terminal and made contact with a second bus passenger inside the terminal (TR. 9). Aquino re-entered the bus terminal and was intent on observing the officers' contact with the second passenger (TR. 11).

Investigator Lutter left the inside of the bus terminal to assist Agent Orduna with a suspicious bag (TR. 11). As the passengers were re-boarding the bus, the officers stood by the bus door with the suspicious bag and asked each passenger whether the bag belonged to the passenger (TR. 12). Aquino stated the bag was not his (TR. 12). When one passenger claimed ownership, Agent Orduna and Investigator Rasgorshek began to talk with that passenger (TR. 12).

Investigator Lutter then entered the bus and made contact with Aquino who was seated approximately half-way to the back of the bus on the driver's side (TR. 11-12). Investigator Lutter stepped past Aquino and then turned back, presenting his identification as a law enforcement officer (TR. 13). Investigator Scott was kneeling on a seat on the opposite side of the bus (TR. 17). Talking to Aquino, Investigator Lutter stated that he was a law enforcement officer, nobody was in any kind of trouble, and nobody was under arrest, then asked Aquino if he would talk with Investigator Lutter (TR. 13). Aquino asked if he had to get off the bus; Investigator Lutter told Aquino he did not have to exit unless he wanted to do so (TR. 13). Aquino remained in his seat (TR. 13). The ongoing passengers had all re-boarded and the driver began the process of boarding passengers originating from Omaha (TR. 14). Investigator Lutter's conversation with Aquino did not delay the bus' departure as the driver was still preparing for departure (TR. 14).

Investigator Lutter asked Aquino about his travel itinerary, and Aquino told Investigator Lutter he was traveling from Merced, California, to Des Moines, Iowa (TR. 14). Investigator Lutter asked to see Aquino's bus ticket, which Aquino handed to Investigator

Lutter (TR. 14).  The ticket indicates it was for one-way passage and was paid for in cash (TR. 14). Investigator Lutter also asked for some identification and Aquino produced a California identification in the name of Luis Aquino (TR. 15).  Investigator Lutter returned the ticket and identification to Aquino after looking at it (TR. 15).

Investigator Lutter told Aquino he contacted Aquino because of Aquino's actions in the terminal and because Aquino appeared to be nervous (TR. 14).  Investigator Lutter told Aquino that as a law enforcement officer he watched for people at the bus station who may be transporting controlled substances or illegal items such as bombs or knives (TR. 14). Investigator Lutter asked Aquino if he had any bags (TR. 14).  Aquino said he did (TR. 16). Investigator Lutter asked Aquino if he would exit the bus and show his bag to Investigator Lutter (TR. 16).  Aquino agreed and walked off the bus followed by Investigator Lutter (TR. 16).  Investigator Scott followed them off the bus and remained nearby to observe (TR. 75).

Aquino and Investigator Lutter first went to the passenger side of the bus to look in the undercarriage area, which was filled with freight but no bags (TR. 16).  Investigator Lutter and Aquino then walked to the driver's side of the bus and Aquino located his bag in the undercarriage luggage area (TR. 16).  Investigator Lutter asked Aquino if Investigator Lutter could search the bag and Aquino's person (TR. 17).  Aquino said he would let Investigator Lutter search his bag (TR. 17).  Investigator Lutter asked if he could conduct a pat search of Aquino's person (TR. 17).  Aquino said he did not want Investigator Lutter to touch him (TR. 17).  Investigator Lutter then asked Aquino if Aquino would unzip his coat and hold his clothing to his body so that Investigator Lutter could tell if there was anything secured under his clothing (TR. 18).  Aquino agreed by opening his jacket and pulling his clothing tight to his body (TR. 18).  Investigator Lutter observed nothing unusual (TR. 18). Investigator Lutter asked Aquino to do the same thing with his pants, which Aquino did; however, Aquino pulled the thigh area tight on both legs but not the lower portion of the leg area (TR. 18).  Aquino was wearing dark-colored, baggy jeans (TR. 18).  Aquino appeared to be very nervous and fidgety and was unable to maintain eye contact with Investigator Lutter (TR. 18).  Investigator Lutter testified Aquino was not responding smoothly to questions being asked (TR. 18). Investigator Lutter  asked Aquino to pull the lower portion of his pant legs tight around his ankles and calf area (TR. 19).  Aquino made half-attempts to do so by using only one hand on each leg (TR. 19).  On the inside of Aquino's right calf

3

area Investigator Lutter observed an unnatural square-shaped bulge, which appeared to be an object secured to Aquino's body (TR. 19). Investigator Lutter asked Aquino to lift his pants up above the bulge and Aquino refused (TR. 19).

Investigator Lutter testified that he placed Aquino in handcuffs, at this point, as a precautionary safety measure (TR. 19). Investigator Lutter then lifted Aquino's pant leg above the bulge and observed a duct-taped bundle taped to his right leg (TR. 20). Based upon his training and experience, Investigator Lutter believed the bundle contained a controlled substance (TR. 20). Investigator Lutter testified he has assisted in 25 to 48 arrests per year in which items have been duct-taped to a person's body (TR. 20-21). In all such cases, the items contained a controlled substance or other contraband (TR. 20-21). Aquino was then escorted into the rear office area of the bus terminal where Aquino was advised of his *Miranda* rights (TR. 21). Aquino declined to waive his rights and asked for an attorney (TR. 22). At this point, the package was removed from Aquino's leg and his body was searched (TR. 22). Two other packages were found taped to Aquino, one on his left leg and one in the crotch area (TR. 22). All of the packages contained methamphetamine (TR. 22). Aquino was removed from the bus terminal and transported to Douglas County Corrections where he was booked for possession with intent to deliver methamphetamine (TR. 22).

## LEGAL ANALYSIS

Encounters between the police and citizens fall into three general categories: (1) consensual or voluntary encounters, which are not seizures and do not implicate the Fourth Amendment, **see, e.g.,** *Florida v. Bostick*, 501 U.S. 429 (1991); *Florida v. Royer*, 460 U.S. 491 (1983); *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008); *United States v. Vera*, 457 F.3d 831, 834-35 (8th Cir. 2006); (2) investigative detentions, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity, **see, e.g.,** *United States v. Sokolow*, 490 U.S. 1 (1989); *Reid v. Georgia*, 448 U.S. 438 (1980); *Terry v. Ohio*, 392 U.S. 1 (1968); *Griffith*, 533 F.3d at 983-84; *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007); and (3) physical arrests, which must be supported by probable cause. *U.S. Const. amend. IV*.

Aquino argues the interaction between himself and Investigator Lutter, while perhaps initially a consensual encounter, quickly transformed into a investigatory stop requiring the protections of the Fourth Amendment pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). Aquino contends the officers did not have reasonable suspicion that he was involved in criminal activity to justify the investigatory stop. **See** Filing No. 17 - Brief p. 4. Additionally, Aquino contends the stop turned into a custodial arrest without probable cause. **See** *id.* The government argues the encounter between Aquino and Investigator Lutter was "entirely consensual" until Aquino was handcuffed. **See** Filing No. 19 - Response Brief p. 5. Further, the government contends Aquino voluntarily exited the bus accompanied by Investigators Lutter and Scott, consented to a search of his luggage and agreed to manipulate his clothing in order to show the officers whether there was anything concealed under his clothing. Finally, the government asserts the officer was justified in handcuffing Aquino as a precautionary measure while he conducted a search of Aquino's body to determine the source of the "unnatural bulge" on his leg. **See** *id.* at 8.

The government has the burden to prove the initial encounter was voluntary, or that justification otherwise existed for each increasingly intrusive restraint on the defendant. **See** *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *United States v. Escobar*, 389 F.3d 781, 785 (8th Cir. 2004) ("The government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority."). "Determining which police-citizen contacts fall within the protections of the Fourth Amendment and which do not is fact intensive and turns on the unique facts of each case." *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008). When evaluating "each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing" the court "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002) (**quoting** *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The government has the burden to prove justification existed for any

restraint on the defendant.  **See** *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *United States v. Escobar*, 389 F.3d 781, 785 (8th Cir. 2004).

The issue is whether the initial contact between law enforcement and Aquino was a purely consensual encounter or an investigatory detention or seizure.  "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry*, 392 U.S. at 19 n.16.  A seizure does not occur when a police officer approaches an individual and merely questions him or asks to examine his identification -- so long as the officer does not convey a message that compliance with his request is required.  *Bostick*, 501 U.S. at 434; **see also** *United States v. Drayton*, 536 U.S. 194, 200-01 (2002).  If "a reasonable person would feel free 'to disregard the police and go about his business,'" the encounter is consensual and no reasonable suspicion is required.  *Id*. (**quoting** *California v. Hodari D.*, 499 U.S. 621, 628 (1991)).  "It is well established that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place . . . [and] putting questions to him if the person is willing to listen."  *United States v. Green*, 52 F.3d 194, 198 (8th Cir. 1995) (citations omitted).  A request for information does not turn consensual questioning into an investigatory stop.  *United States v. Pena-Saiz*, 161 F.3d 1175, 1177 (8th Cir. 1998); *United States v. Poitier*, 818 F.2d 679, 682-83 (8th Cir. 1987).  Further, as long as a defendant was not selected for an approach for any purely discriminatory reasons, e.g., race or ethnicity, the fact law enforcement chose to approach a particular defendant is without constitutional implication.

Although the questioning did not require **Miranda** warnings, no reasonable person would feel free to disregard the officer and go about his business.  Aquino was seated in a bus with Investigator Lutter, who stands 6'6" and weighs more than 250 pounds, standing over him asking him questions while another officer, Investigator Scott, kneeled on an empty seat between Aquino and the front door of the bus (TR. 42-43).  Aquino answered Investigator Lutter's questions, produced his bus ticket and identification, and "complied" with Investigator Lutter's request to step off the bus and identify his luggage.  In the presence of at least two officers, Aquino "complied" with Investigator Lutter's request to search his luggage.  In response to Investigator Lutter's request to conduct a pat search

6

of Aquino's person, Aquino told Investigator Lutter that he did not want Investigator to touch him. Investigator Lutter continued to question Aquino and requested that Aquino open his coat and hold his clothing close to his body to determine if anything was hidden under his clothing. No reasonable person would have believed that he was free to leave without the officer's permission, or to end the conversation and refuse to answer the officer's questions and ignore the officer's requests. The encounter was neither voluntary nor consensual.

An investigative detention is a seizure of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity. **See, e.g.,** *United States v. Sokolow*, 490 U.S. 1 (1989); *Reid v. Georgia*, 448 U.S. 438 (1980); *Terry*, 392 U.S. at 1; *Griffith*, 533 F.3d at 983-84; *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007). An officer is allowed to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Saenz*, 474 F.3d at 1136 (**citing** *Terry*, 392 U.S. at 30). "Any detention consequent to an investigative stop must be temporary and must last no longer than necessary." *United States v. Dickson*, 58 F.3d 1258, 1263 (8th Cir. 1995). "In deciding whether a detention lasts too long to be justified in an investigative stop, and therefore becomes an arrest, we consider whether the police 'diligently pursued' a means of investigation likely to resolve their suspicions quickly." *Dickson*, 58 F.3d at 1263 (**quoting** *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). "Generally, the police may take reasonably necessary steps to 'maintain the status quo of a situation while verifying or dispelling suspicion.'" *Dickson*, 58 F.3d at 1263 (**quoting** *United States v. Seelye*, 815 F.2d 48, 50 (8th Cir. 1987)).

Similarly, the officers had no reasonable suspicion supported by articulable facts that criminal activity might be afoot. The fact they briefly observed an individual take an interest in law enforcement's questioning of fellow passengers while talking on a cell phone, walk around the bus station before re-boarding, and act nervous when approached by an officer does not provide reasonable suspicion of any criminal activity. Furthermore, even considering Aquino's apparent interest in the officers' contact with other passengers and nervous appearance, Aquino's conduct does not supply articulable facts that criminal activity might be afoot. Aquino's conduct cannot be said to differ from any other member

7

of the community who is in a bus station and observes law enforcement contacts with his fellow passengers. In any event, Aquino's conduct did not support the investigatory detention occasioned by Investigator Lutter asking Aquino to exit the bus to identify his luggage, escorting Aquino off the bus to the undercarriage storage area and further asking for Aquino's consent to search his bag and conduct a pat-down search of his person. For these reasons, Aquino's motion to suppress should be granted as no reasonable suspicion supported his stop and detention by officers on or off the bus. The government has failed to meet its burden of showing the encounter between Aquino and the officers, on February 8, 2010, was voluntary, or that justification otherwise existed for Aquino's stop or detention. Accordingly, any evidence obtained stemming from the unconstitutional stop and detention should be suppressed.[1]

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Luis Alberto Aquino's motion to suppress (Filing No. 16) be granted.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 30th day of November, 2010.

BY THE COURT:
 s/ Thomas D. Thalken
United States Magistrate Judge

---

[1] Given the court's conclusion with respect to the investigatory detention, discussion of whether Aquino was under arrest without probable cause when he was handcuffed by Investigator Lutter is unnecessary.

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.