IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LUIS ALBERTO AQUINO,<br><br>    Defendant. | 8:10CR217<br><br>MEMORANDUM AND ORDER |

   This matter is before the court on the government's objection, Filing No. 36, to the findings and recommendation ("F&R") of the magistrate judge, Filing No. 35. The magistrate judge recommended granting the defendant's motion to suppress, Filing No. 16. *See* Filing No. 35, F&R at 8. The defendant is charged with possession of 50 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Aquino seeks to suppress evidence seized by the Commercial Interdiction Unit ("CIU") of the Nebraska State Patrol ("NSP") at the Greyhound Bus Depot in Omaha, Nebraska, on February 9, 2010.

   Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a *de novo* determination of those portions of the F&R to which the defendant objects. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcript of the suppression hearing on September 28, 2010, and the exhibits submitted at the hearing. *See* Filing No. 34, Transcript (Tr.); Filing No. 31, Exhibit List.

## FACTS

   The government concedes that the magistrate judge has correctly recited the facts. The court therefore accepts the factual findings of the magistrate judge and they will be

repeated only as necessary to this opinion. *Id.* at 104-09. Briefly, the evidence adduced at the hearing shows that the encounter occurred at the Greyhound bus station in Omaha, Nebraska, during a scheduled stop to refuel and board Omaha-originating passengers. Filing No. Filing No. 34, Tr. at 5-6. Four law enforcement officers assigned to the drug interdiction unit were working at the bus station. *Id*. at 5. After the passengers disembarked, Aquino could observe that two officers questioned two of the passengers. *Id.* at 33-34. As travelers reboarded the bus, they were questioned by two law enforcement officers asking each passenger whether he or she owned a particular piece of luggage. *Id.* at 12. After observing Aquino in the bus station and noticing that he remained standing, talked on the phone, seemed interested in the officers' questioning of other passengers, and paced back and forth, Investigator Lutter, who is 6'6" and weighs 240 pounds, entered the bus, and approached the defendant, who had reboarded the bus and was who was seated in the mid-portion of the bus. *Id.* at 11-13. The officer stood next to the defendant, presented identification as a law enforcement officer, and began conversing with the defendant. *Id.* at 13. During this time, another officer, Investigator Jason Scott, was kneeling on a seat on the opposite side of the bus. *Id.* at 17, 74. After questioning the defendant on his travel plans and asking to see his ticket, Investigator Lutter stated that he was investigating crimes involving controlled substances and contraband and asked if Aquino had any luggage. *Id.* at 16. When Aquino responded that he did, Investigator Lutter asked Aquino to exit the bus to get his bag, which was stowed under the bus, to show it to Investigator Lutter. *Id.* The defendant agreed and got off the bus, followed by Investigator Lutter and the other officer. *Id.* at 48, 75.

Investigator Lutter then asked to search the defendant's luggage and person. *Id.* at 49-50. Aquino consented to a search of the luggage, but stated that he did not want Investigator Lutter to touch him. *Id.* at 51. Lutter then asked Aquino to unzip his jacket and to pull his clothing tight to his body. *Id.* at 18. Aquino did so and Lutter testified that he observed nothing unusual, until Aquino pulled the thigh area of his dark-colored, baggy jeans tight on both legs but did not do so on the lower portion of his legs. *Id.* at 18-19. Investigator Lutter then asked the defendant to pull the lower portion of his pant legs tight around his ankles and calf area and Lutter observed a square-shaped bulge around the defendant's ankles. *Id.* at 19. Investigator Lutter testified that he asked Aquino to raise his pant leg and Aquino refused. *Id.* at 19. At that point, Lutter placed the defendant in handcuffs. *Id.* at 19, 58. Investigator Lutter testified that he then lifted up the defendant's pant leg and found a bundle that was duct-taped to his right leg. *Id.* at 20.

Investigator Scott testified that the entire episode lasted for 20 to 25 minutes. *Id.* at 79. Investigator Lutter testified that the conversation with Aquino lasted 10 to 15 minutes. *Id.* at 43.

The magistrate judge found that the incident was not a purely consensual encounter because no reasonable person in Aquino's position would have felt feel free to terminate the encounter and go about his business. Filing No. 35, F&R at 6. The magistrate judge characterized the encounter as an investigative detention and found it was not supported by a reasonable suspicion of criminal activity. *Id.* at 7.

The government challenges the magistrate judge's finding that the encounter was not purely consensual. It argues that there is nothing in the record to support the magistrate judge's "supposition" that Mr. Aquino was intimidated or threatened by being

questioned in the presence of two law enforcement officers, since the defendant did not testify at the hearing. Filing No. 37, Brief at 2. It contends that the uncontroverted evidence shows only that the defendant knew Investigators Lutter and Scott were law enforcement officers and engaged in conversation with them. *Id.* at 3. The government argues that the "the encounter between Mr. Aquino and law enforcement was entirely consensual up until the moment Investigator Lutter handcuffed Mr. Aquino." *Id.* at 7. It relies on *United States v. Favela*, 247 F.3d 838 (8th Cir. 2001) as support for this position. *Id.* at 6. The government does not challenge the finding that noting in the record supports reasonable suspicion of criminal activity to justify the detention.

## DISCUSSION

The court agrees with the magistrate judge's conclusion for the reasons stated in his opinion. The issue is not whether Aquino subjectively felt intimidated or threatened; it is whether a reasonable person in the defendant's position would have felt free to leave or to decline the officer's requests. *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (noting that "[t]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business'") (citation omitted).

Further, the court finds the government's reliance on *Favela* is misplaced. In that case, the defendant voluntarily consented to a request to pull her shirt tight to her body and then consented to the officer's request to touch her person. *Favela*, 247 F.3d 838, 839 (8th Cir. 2001). In *Favela*, the initial encounter took place out in the open in a busy public airport rather than within the confines of a bus. *Id.* Further, the court in *Favela* found it

4

significant that the encounter was brief, that the officers did not "surround" the defendant, but stood in front of her without displaying weapons, and did not ask her to accompany them to a different location. *Id.* at 840. In contrast, the totality of circumstances presented in this case are closer to those in cases wherein the Eighth Circuit Court of Appeals has found that a law enforcement contact was more than a purely consensual encounter. *See, e.g.*, *United States v. Eustaquio*, 198 F.3d 1068, 1070 (8th Cir.1999) (an officer touching a bulge in the defendant's clothing amounted to a seizure under the Fourth Amendment), and *United States v. Green*, 52 F.3d 194, 197 (8th Cir.1995) (a consensual encounter became an investigatory stop that required reasonable suspicion when, after the defendant declined a request to search her bag, the officer informed he would detain luggage for a dog-sniff).

In this case, although the officer did not characterize his statements as commands, it would have been reasonable for the defendant to assume they were. Three officers were involved in the drug-interdiction exercise. Every passenger who reboarded the bus was questioned with respect to ownership of a bag. The defendant observed the other officers questioning other passengers. Investigator Lutter asked the defendant numerous pointed questions and then informed the defendant that he was conducting drug interdiction and looking for contraband items. A reasonable person would assume that such pointed inquiries presuppose a suspicion of criminal conduct and mean that the person is the subject of a particularized investigation into criminal acts and is not free to leave. The evidence shows the defendant had already been singled out for investigation in advance of the purportedly consensual conversation because he acted overly interested in the officers' contacts with other passengers, had remained standing while in the station,

5

talked on his cell phone, and paced. These facts, together with the fact that the defendant was not told he was free to leave or that he did not have to answer the officer's questions, indicate that the encounter was not free of coercion.

Law enforcement conduct in this case escalated beyond approaching an individual and asking a few questions without conveying the message that compliance is required. *Cf.* United States v. Perdoma, 621 F.3d 745, 749 (8th Cir. 2010). The court cannot conclude from this evidence that the contact was a voluntary, cooperative conversation. It is clear to the court that this case involves an investigative detention for which the government must show adequate justification. The court agrees with the magistrate judge that the encounter most resembles a *Terry*-type investigative detention and the government's contention that it was consensual does not make it so.[1]

IT IS ORDERED:

1. The government's objection (Filing No. 36) to the Findings and Recommendation of the magistrate judge is overruled.

---

[1]Although the government does not challenge the finding of no reasonable, articulable suspicion, the court notes that the facts on which the officers relied to single out the defendant for questioning do not furnish the reasonable, articulable grounds for suspicion of criminal activity required to justify the detention of the defendant. The Eighth Circuit has consistently found certain interdiction "indicators" such as nervousness do not furnish probable cause or cause for a reasonable articulable suspicion because the indicators are as consistent with innocent activity as criminal conduct. *See, e.g.,* United States v. Jones, 254 F.3d 692, 697 (8th Cir. 2001) (walking around the phone bank, looking behind him, traveling without luggage, and arriving from Los Angeles); United States v. Collins, 200 F.3d 1196, 1197 (8th Cir. 2000) (suspect arrived from source city, looked around, did not stop for luggage, paid for ticket with cash)*;* United States v. Eustaquio, 198 F.3d 1068, 1071 (8th Cir. 1999) (nervousness, no luggage, source city, same day purchase with cash); United States v. Tovar-Valdivia, 193 F.3d 1025, 1028 (8th Cir. 1999) (involving arrival from source city, hurrying, and new luggage); United States v. Fletcher, 91 F.3d 48, 51 (8th Cir. 1996) (source city, conduct in airport); United States v. Green, 52 F.3d 194, 200 (8th Cir. 1995) (source city, traveling alone, nervousness, new clothing and bag, walking hurriedly); United States v. O'Neal, 17 F.3d 239, 242 (8th Cir. 1994) (source city, nervousness, walking briskly, athletic clothing, carrying athletic-type bags); United States v. White, 890 F.2d 1413, 1419 (8th Cir. 1989) (source city, time of day, cash ticket purchase and nervousness).

2.    The Findings and Recommendation of the magistrate judge (Filing No. 35) are adopted, in part, in accordance with this Memorandum and Order.

3.    The defendant's motion to suppress (Filing No. 16) is granted.

DATED this 18th day of January, 2011.

                            BY THE COURT:

                            s/ Joseph F. Bataillon
                            Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.